MALCOLM E. MacDONALD, et al., Plaintiffs

v.

V.I. BOARD OF MEDICAL EXAMINERS, et al., Defendants

Civil No. 76-588

District Court of the Virgin Islands

Div. of St. Thomas and St. John

June 29, 1979

Peter A. Martin, Esq. (Dudley, Martin & Dudley), St. Thomas, V.I., *for plaintiffs*

IVE A. SWAN, ESQ., Attorney General, by DANIEL A. ISAACSON, ESQ., Assistant Attorney General (Department of Law), St. Thomas, V.I., *for defendants*

CHRISTIAN, *Chief Judge*

### MEMORANDUM

Perhaps, mindful of the saying that the race goes not necessarily to the swift but to those who endure to the end, these three plaintiffs, Malcolm E. MacDonald, Alexander C. Politos and F. Donnell Hart, having successfully weathered the storm of the Board of Medical Examiners' residence requirement, are still before the Court. They now seek the ultimate prize, that is, an order of the Court directed to the Virgin Islands Board of Medical Examiners and the Commissioner of Health of the Virgin Islands compelling the issuance of a license to each of them to practice their profession, chiropractic.

After considerable haggling back and forth, the applications of these three plaintiffs to be examined for licensure as chiropractors received the favorable consideration of the Virgin Islands Board of Examiners for Medicine and Related Professions. They presented themselves to the Board at the appointed place on November 9th and 10th, 1977, to be examined. All three failed to pass the examination. They now question the validity of that examination and ask that by order of the Court they be licensed to practice.

Plaintiffs' challenge to the testing is simply stated. The test, they say, was not designed to be administered to prospective chiropractors nor was it appropriate. They contend that it was strictly an examination for medical doctors, which they are not and have never held themselves out as being.

It is beyond question that the examination was designed

for the purpose plaintiffs assert it was. Dr. Lillian D. Terris, President of the Professional Examination Service with offices at 475 Riverside Drive, New York, New York, under whose auspices the test was prepared, emphatically stated that they fashioned an examination for the testing of physicians. The agreement between the Professional Examination Service and the Board states specifically that "the Service has prepared an examination intended to be used in connection with the licensure of doctors of medicine". It remains to be determined, therefore, whether it was lawful and proper for the Board to have subjected these plaintiffs to that type of examination.

In order to better understand and resolve the problems presented, one should answer the question what is chiropractic? The memorandum[1] submitted on behalf of the Board defines that word, quoting a publication of the Parker College of Chiropractic in the following terms:

Chiropractic is that science and art which utilizes the inherent recuperative powers of the body, and deals with the relationship between the nervous system and the spinal column, including its immediate articulations, and the role of this relationship in the restoration and maintenance of health.

In Webster's Third New International Dictionary (Unabridged, 1966) chiropractic is defined as,

a system of healing based upon the theory that disease results from a lack of normal nerve functions and employing treatment by scientific adjustment of body structures (as the spinal column) and utilizing physical therapy when necessary.

The Legislature of the Virgin Islands has defined the practice of that science as

the detecting and correcting by manual means of the structural imbalance, distortion or subluxations in the human body for the purpose of removing nerve interference and effects thereof, where

---

[1] Page 4 memorandum on behalf of defendants.

such interference is the result of, or related to, distortion, misalignment, or subluxation of or in the vertebral column.[2]

■ Defendants do not contend that the examination which plaintiffs sat was not that for a doctor of medicine. Indeed, they could not. Not only for the reasons stated above, but because it is beyond controversy that seven medical doctor applicants sat the same examination as did these plaintiffs, at the very same time. The issue before the Court then, could not be better framed than as expressed by counsel for the Board in his memorandum:

. . . whether it is arbitrary or unreasonable to require a chiropractor to pass an examination designed to test the knowledge and skill of a medical doctor[3]

For the Board, the answer is an emphatic, no. In the Court's view, however, all circumstances considered, the answer has to be, and is, in the affirmative. Not only was the Board's action in so testing these plaintiffs arbitrary and unreasonable, it would appear to be contrary to the then prevailing law, as well.

■ The Board relies heavily on Louisiana State Board of Medical Examiners v. Fife, 162 La. 681, 111 So. 58 (1926) and on the opinion in England v. Louisiana State Board of Medical Examiners, 263 F.2d 661 (5th Cir. 1959), cert. denied 359 U.S. 1012. I find those cases to be somewhat inappropriate, however, for there the issue seems to have been whether the State had the right to judge the qualifications of those who would treat the sick. That any state is so empowered is not open to question. Our concern here is with the action of the Board of Examiners who

---

[2] Title 26 V.I.C. § 167a. Subsequent to the examination of plaintiffs this section was enacted into law by Act No. 4234, Bill No. 8073 of the Twelfth Legislature of the Virgin Islands duly passed October 5, 1978, and approved October 25, 1978.

[3] Page 8 memorandum on behalf of defendants.

seem, in this case, to have ignored the law, either unconsciously or by design. As the England court said in reference to the testing proposed by the state of Louisiana,

[i]f they are appropriate to the calling or profession, and attainable by reasonable study or application, no objection to their validity can be raised because of their stringency or difficulty. It is only when they have no relation to such calling or profession, or are unattainable by such reasonable study and application, that they [tests] can operate to deprive one of his right to pursue a lawful vocation. 263 F.2d at 666.

As the same court went on to point out,

No government has authority to outlaw an apparently useful and beneficial profession with no showing or proof otherwise. 263 F.2d at 673.

Certainly the Legislature of the Virgin Islands made no such attempt. To the contrary, the Legislature recognized and accepted chiropractic, not as the practice of medicine but as one of the related professions. A fortiori, the Board could not lawfully do what the Legislature has not done and could not do. Section 31 of Title 27 recognizes these plaintiffs' profession by making it

unlawful for any person to engage in the practice of medicine, surgery, osteopathy, optometry, chiropracty, naturopathy or any other system of the treatment of injuries, disease, pain or deformity, or to hold himself forth as a practitioner thereof or to assume the title of Doctor in relation thereto, except as provided in this subchapter.

Going beyond that, the then existing law of the Virgin Islands contemplated separate testing for these different, though related, disciplines. It is provided in § 35(a) that,

[t]he Board shall hold regular examinations . . . for admission to practice medicine or other sciences covered by the provisions of this subchapter. The examination shall cover all subjects as the Board prescribes, which, in accordance with accepted medical standards, are adequate and sufficient for proper evaluation of an

applicant's qualifications to practice medicine or other sciences under this subchapter.[4]

True, the Legislature used the word "chiropracty" and the Board of Medical Examiners when wrestling with this situation at one of its meetings concluded that "chiropracty" could be interpreted to mean " 'chiropractic' as practiced by chiropractors or 'chiropody' as practiced by podiatrists". The Court has searched Webster's Dictionary, abridged and unabridged, and has not found the word, chiropracty. The Court concludes, however, that the word intended was chiropractic. The Board likewise may have reached the same determination because in Article III of its bylaws, rules and regulations in setting up the committees called for under the article, it provided for a "Committee on Related Medical Professions, including—but not limited to—physiotherapy, podiatry, dental hygiene and chiropractic".

If then, we read the various sections of Title 27 harmoniously with the rules and regulations of the Board, we must conclude that the separate discipline of chiropractic was, at the pertinent time, recognized in our law, and that applicants for licensure in that field were to be tested in a manner appropriate to their science. The Court can think of no reason whatsoever why chiropractic more than the other related fields, dentistry, podiatry, nursing, may reasonably be singled out for testing identical to that given doctors of medicine. The question that constantly springs to mind is, what restrictions would have been placed on the practice of these plaintiffs had they passed the examination with flying colors? The short of it is that these plaintiffs are not medical doctors. They do not prescribe drugs. They do not deliver babies. They do not do surgical procedures. They are trained to follow a single method of treatment of certain ailments. I therefore find and conclude that it was

---

[4] Sections 31 and 35 are in the same subchapter, that is, subchapter II.

arbitrary and unreasonable for the Board to have administered the examination prepared solely for doctors of medicine to these plaintiffs on a claim of testing their proficiency as chiropractors. The Board may not so undertake to regulate the practice of these plaintiffs' profession when its actions, as the Supreme Court of the United States has said, "have no relation to such calling or profession" Dent v. West Virginia, 129 U.S. 114 . . . . "[have] no real or substantial relation to those objections" Jacobson v. Mass., 197 U.S. 11 . . . . "are so unreasonable or extravagant as to interfere with property and personal rights of citizens, unnecessarily and arbitrarily" Watson v. Maryland, 218 U.S. 173 . . . . "are arbitrary and unreasonable attempts to exercise the authority vested in it, in the public interest" Graves v. Minnesota, 272 U.S. 425 . . . . or "[have] no rational relation to that objective and therefore is beyond constitutional bounds" Williamson v. Lee Optical Company, 348 U.S. 483. See also England, supra at 674.

It is in accordance with the above that I find it necessary to characterize the action of the Board, even though I do so with reluctance and fully mindful of the fact that this is an area in which the court should act with great restraint.

That the result (the failure of the plaintiffs), predictable as it was, may have been as intended is made clear, or at least strongly suggested by the testimony and attitude of the parade of Commissioners of Health, past and present, who took the stand to testify in support of the action of the Board. One of them, in particular, revealed his disdain for plaintiffs when he stated in substance that if we were to license chiropractors in the Virgin Islands we would be reverting to the old dark days of "the setter".[5]

One gathers from a perusal of the minutes of the Board that they were in something of a quandary as to the

---

[5] A practitioner of a local art who "sets" bones or cures sprains by a system of massaging. As a rule they are totally without formal training of any kind.

type of examination which should properly be administered to a chiropractic. The wonder is that they did not address an inquiry to the very testing service which prepared the medical examination. Dr. Terris testified (by deposition) that her organization was fully competent to prepare an examination for the testing of chiropractors. They were never asked to do so, she testified, but had they been requested to do so, would have been willing and able to comply. There is no excuse, therefore, for the Board's decision to test plaintiffs as it did, knowing their unpreparedness for such an examination and that, in any event, they would not be practicing medicine.

A decision that the test administered to these plaintiffs was so arbitrary and unreasonable as to be impermissible gives them no great comfort. For, more than that, they are clamoring to be admitted to the practice of their profession. To direct that a proper examination be now administered, while not a futile exercise as their counsel suggests, is one that is, in the Court's opinion, fraught with unfairness to these plaintiffs. More immediate and decisive relief seems justified and warranted. The question then is whether this Court can order that they be licensed, for if the power exists, this situation calls for its exercise.

An approach suggested by defendant is the medium of § 36(b) of Title 27,

[t]he Board may, under regulations or provisions of its bylaws, admit without examination legally qualified practitioners of medicine or its allied sciences as covered by the provisions of this subchapter who hold certificates to practice in any State which has educational requirements equal to those of the Virgin Islands and which extends like privileges to legally qualified practitioners from the Virgin Islands . . . .

By resolution dated March 10, 1976, the Massachusetts Board of Chiropractic Registration passed the following resolution,

The Board reviewed the 1974 legislative changes in the Virgin Islands Chiropractic Licensing Act and found them to be of high standards and satisfactorily compatible with the Massachusetts statutes.

A quorum being present, a motion was made by Victor Almeida, M.D. and duly seconded, and it was voted to extend reciprocity to the Virgin Islands and to welcome them as a newly licensed jurisdiction.

The Virgin Islands Board of Examiners is quick to point out that the Chairman of the Massachusetts Board, at the time of the resolution, was one of these very plaintiffs, Malcolm E. MacDonald. Without flatly so stating, the Board suggests that plaintiff MacDonald was prompted by the ulterior motive of "feathering his own nest". Be that as it may, the Commonwealth of Massachusetts has extended reciprocity to the Virgin Islands and it is not for the Court to question or impugn its motive in so doing. It is sufficient that I find, as I do, that the educational requirements for chiropractors in the Commonwealth of Massachusetts at the time of the resolution and at the time these plaintiffs applied for licensure equalled or surpassed that of the Virgin Islands. I say surpassed if for no other reason than that the then requirements of the Virgin Islands were not too specifically stated and were unclear, whereas those of Massachusetts, on the testimony before the Court, were of a high and acceptable standard. That the Virgin Islands, at the time here pertinent, and earlier, had some requirements is evidenced by the fact that at least temporary licenses to practice chiropractic had been issued.

█ Fairness to plaintiffs dictates that the Board certify their names to the Commissioner of Health for licensing, and that he issue licenses to them forthwith. It cannot now be said, as the Board urged at trial, that we do not have an Act which defines chiropractic, limits its scope or otherwise regulates that profession. We do have such a statute, Act No. 4234, adverted to above. That statute has properly

365

and firmly woven chiropractic into the fabric of our laws governing the practice of medicine and related professions. Section 167a of Title 27, as we have seen, adequately defines the science. Under § 31, chiropractic, like dentistry and nursing, has been relieved from the stricture of that section. It can no longer be feared that the licensing of these plaintiffs would return the Virgin Islands to the "dark ages" or show criminal indifference to the health and well-being of the people of the Virgin Islands.

■ From a standpoint of giving full effect to Act No. 4234, it is necessary that there be at least one licensed chiropractor who is a resident of the Virgin Islands. The Board of Chiropractic Examiners constituted by that law is to consist of "four physicians and one doctor of chiropractic, all of whom shall be licensed to practice in the Virgin Islands". It is this Board which will in the future prepare and administer tests for licensure of chiropractors, but the Board cannot possibly come into being at this time because we lack a licensed chiropractor. Persons desiring to follow that profession in the Virgin Islands are therefore caught in a vicious cycle unless some form of "affirmative action" is taken. The studied refusal to act of those in a position to take action makes it absolutely necessary for the Court to step into the breach. Those in authority, in defiance of the Legislature, have, in effect, stated to the Court that they have never acted in accordance with § 36(b) and that they never will. There must be some relief from so grave an abuse of discretion. It seems that it can come only from the Court. For the reasons just stated, therefore, and sustained by the stand of the Court in Schoenebaum v. Department of Registration and Education, 346 Illinois Appeals 26, 104 N.E.2d 662, I conclude that this Court is authorized to order the admission to licensure of these plaintiffs and it will be so ordered.